# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-1560V

| | |
|---|---|
| DIANE M. HIATT,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: May 13, 2025 |

*Dennis W. Potts*, Honolulu, HI, for Petitioner.

*James Vincent Lopez*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On September 11, 2023, Diane M. Hiatt filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of an influenza ("flu") vaccine she received on September 10, 2022, she suffered a left shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons discussed below, I find it most likely that Petitioner suffered the onset of her shoulder pain specifically within 48 hours of vaccination, and that she is

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

otherwise entitled to compensation. I also find that Petitioner should be awarded $25,000.00 for her actual pain and suffering.

## I. Relevant Procedural History

This claim was initiated in September 2023, and relevant medical records were filed thereafter. ECF No. 1-9. Approximately seven months later, on April 25, 2024, Respondent filed his Rule 4(c) Report (ECF No. 38) contesting Petitioner's ability to establish a Table claim. Respondent's Report at 5-7. Respondent contended that Petitioner had not provided adequate proof of vaccination, and that Petitioner could not prove that the onset of her shoulder pain occurred within 48 hours of vaccination. *Id*.

On July 9, 2024, I issued a Scheduling Order after Petitioner filed additional proof of vaccination. ECF No. 22. Based on a preliminary view of the records, I informed the parties that I was likely to find in Petitioner's favor on the issues of situs and onset. *Id*. I encouraged the parties to consider settlement in light of these findings. However, the parties were unsuccessful at informally resolving the case and elected to brief the issues of entitlement and damages. ECF Nos. 27-29. The parties have now filed their respective briefs, and this case is ready for adjudication. Petitioner's Motion for Ruling on the Record ("Mot."), ECF No. 27; Respondent's Response ("Opp."), ECF No. 28; Petitioner's Reply ("Reply"), ECF No. 29.

## II. Relevant Medical History

### A. Medical records

On September 10, 2022, Ms. Hiatt, a 76-year-old retired nurse practitioner, received a flu vaccine at a Safeway Pharmacy in Honolulu, Hawaii. Exhibit ("Ex.") 1 at 2; Ex. 7 at 2. The vaccination records do not identify the arm into which the vaccine was administered. Ex. 1 at 2; Ex. 7 at 2. Ms. Hiatt's January 24, 2024 declaration states that she received the flu vaccine in her left arm on this date. ECF No. 15 at 6. Ms. Hiatt's medical history had no documented history of left shoulder pain or injury.

On October 17, 2022 (now 37 days after vaccination), Ms. Hiatt had a telehealth consult with her primary care provider ("PCP"), Bernard Chun, M.D., for a follow-up regarding bloodwork and urinalysis lab results. Ex. 2 at 56. She reported an episode of atrial fibrillation just prior to the consultation, and she was lying in bed and dizzy. *Id*. The urinalysis results were consistent with a urinary tract infection ("UTI"), and Dr. Chun advised Petitioner to continue to "[t]ake another day of Cirpo." *Id*.

2

On October 19, 2022, Ms. Hiatt underwent an atrial fibrillation ablation procedure performed by cardiologist David Singh, M.D., to address an irregular heartbeat. Ex. 8 at 1. She had previously undergone an ablation procedure in June 2021. *Id.* at 5.2 On November 23, 2022, and December 16, 2022, respectively, Ms. Hiatt underwent a DEXA scan to evaluate her bone density and a bilateral mammogram. Ex. 2 at 12-16. There is no indication that Petitioner mentioned left shoulder pain at these times.

On January 17, 2023 (four months and seven days after vaccination), Ms. Hiatt had a routine six month follow up with her PCP for lower back pain and lumbar disc disease. Ex. 2 at 53. She reported her lumbar pain was 2-3/10, while taking Celebrex. *Id*. She also reported she "[e]xercises 4-5X/week. Stretches 30 mins. Plays Tennis 3X/week for 2 hours." *Id*. No physical exam was conducted, and left shoulder pain was not mentioned. *Id*. at 53-55.

On January 25, 2023, Ms. Hiatt had another telehealth consultation with her PCP, and at this time she complained of "[l]eft shoulder pain." Ex. 2 at 50. Petitioner reported that "in September" she received the flu vaccine in the "upper part of her left deltoid" and "wondered if the flu vaccine went into her left shoulder joint." *Id*. On exam, Ms. Hiatt could not extend her left shoulder beyond the horizontal plain. *Id*. Dr. Chun diagnosed her with "[c]hronic left shoulder pain" and referred her to an orthopedist. *Id*. at 52.

On February 27, 2023, Ms. Hiatt was evaluated by orthopedist Jay Marumoto, M.D., at Orthopedic Associates, for "[l]eft shoulder pain." Ex. 3 at 3, 5-6. In her intake questionnaire, Petitioner stated that she "had a flu shot 9/19 [sic] and [the] pain began next day [and] never subsided. The injection was given very high [and] I think perhaps it went into my bursa or joint space [and] caused inflammation." *Id*. at 6. She rated her pain 4/10 and reported the pain worsened with raising her arm. *Id*. Petitioner further reported that the vaccine "was given by a pharmacist and was quite high on her shoulder." *Id*. at 3. On exam, Petitioner exhibited full range of motion ("ROM") with positive impingement, and pain with resisted abduction and external rotation. *Id*. at 7. Dr. Marumoto diagnosed Ms. Hiatt with "left shoulder post injection impingement," and referred her to physical therapy ("PT"). *Id*. at 5.

On February 28, 2023, Ms. Hiatt had her initial PT evaluation at Action Rehab for "pain in left shoulder." Ex. 4 at 7-9. She reported that in September 2022, she "had a flu shot and believe[d] they went high and poked into the bursa." *Id*. at 7. She said most of her pain was caused by raising her arm out to the side and she had trouble dressing her upper body due to the pain. *Id*. Ms. Hiatt rated her pain at 2-6/10. *Id.* at 8. She said she typically played tennis three to four times per week but was currently unable to play due to pain. *Id*. On exam, Ms. Hiatt had ROM restrictions and strength deficits. *Id*. at 9. By Ms.

3

Hiatt's third PT session on March 8, 2023, she stated that she was able to play tennis before coming to PT on that day, but during subsequent PT sessions she complained of difficulty tossing the ball up with her left arm to serve. *Id*. at 12, 16, 19. Petitioner attended eight total PT sessions through March 27, 2023. *See id*. at 21.

On May 3, 2023, Ms. Hiatt followed up with Dr. Marumoto, complaining of right ankle pain, right elbow pain, and left shoulder pain. Ex. 3 at 4. She reported spraining her ankle two months prior, and then spraining her elbow during PT. *Id*. Ms. Hiatt was unable to straighten her elbow, which "limit[ed] her tennis." *Id*. She reported that the "left shoulder physical therapy improved her strength, but not her pain." *Id*. On exam of Ms. Hiatt's left shoulder, she had "[f]ull range of motion with positive impingement" and "[p]ain with resisted abduction and external rotation." *Id.* at 7. Dr. Marumoto administered a left shoulder subacromial cortisone injection. *Id*. at 7-9. The diagnoses were left shoulder post-vaccine impingement, right tennis elbow, and right ankle posttraumatic pain, possible occult fracture. *Id*. at 8.

On June 23, 2023, Ms. Hiatt had another routine six month follow up with Dr. Chun for her lower back pain/lumbar disc disease. Ex. 2 at 47. Petitioner reported straining her ankle playing tennis, and she was attending PT for this injury. *Id*. There was no complaint of left shoulder pain, but her visit diagnosis included "[c]hronic left shoulder pain." *Id.* at 49.

Ms. Hiatt's January 24, 2024 declaration represented that she has "not received any further medical treatment since the date of [her] last office visit to Dr. Marumoto on May 3, 2023." ECF No. 15 at 6. Petitioner further claims that she "do[es] not anticipate receiving any additional medical treatment, other than possibly periodic steroid injection, for [her] left shoulder barring an[y] unexpected, major complication." *Id.* Ms. Hiatt stated that she "continue[s] to experience some pain and discomfort with limited ROM in [her] left shoulder on a daily basis." *Id*. at 7.

### III. Parties' Respective Arguments

#### a. Petitioner

Petitioner argues that the medical records support her claim that she suffered a SIRVA injury following receipt of the flu vaccine on September 10, 2022. Petitioner states that although she waited until January 2023 to report her injury, she did, in fact, experience significant pain and discomfort in her left shoulder "shortly after receipt of the vaccination." Mot. at 2. Petitioner argues that because her shoulder pain started the day

4

after vaccination, she has demonstrated a Table SIRVA claim and is entitled to compensation. Motion. at 2-3.

Petitioner has requested $45,000.00 in pain and suffering. She argued that she continues to have pain and discomfort in her left shoulder on a daily basis. Mot. at 8. Ms. Hiatt states her life expectancy is 11 years according to the National Vital Statistic Reports, and that it is a "virtual certainty" that her current symptomology will worsen as she ages.

    b. **Respondent**

Respondent argues that the contemporaneous medical records do not demonstrate that Petitioner has satisfied her burden to establish a Table SIRVA claim. Opp. at 6. He contends that there is not preponderant evidence to establish that the onset of Petitioner's let shoulder pain began within 48 hours after vaccination. *Id*. at 7. Respondent noted that Petitioner had several intervening medical appointments between the time of vaccination and the time she was first seen for her left shoulder pain (four months and 15 days), and did not report shoulder pain during any of these visits. *Id*.

Respondent also points out that Petitioner has not cited to any comparable cases to justify her requested damages of $45,000.00. Opp. at 12. Respondent has not, however, proposed any specific amount to be awarded for damages should Petitioner prevail, other than to state that "the government routinely proffers cases for less than $37,500.00 when it is clear that damages are worth less than the lowest reasoned pain-and-suffering awards." *Id*. at 11. Respondent argues that Ms. Hiatt's treatment course was very limited – her symptoms were managed with eight PT sessions and one steroid injection. *Id*. Respondent also noted the four-month delay before Petitioner sought treatment. *Id*.

## IV. <u>Applicable Law</u>

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

V.   <u>Analysis</u>

**Fact Findings – Onset and Entitlement**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

7

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may

be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

Respondent has only contested the onset requirement in Ms. Hiatt's case.[4] After a review of the entire record, and as set forth below, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA.

*Pain Occurs with the Specified Timeframe (Onset)*

In order to meet the definition of a Table SIRVA, a petitioner must show that she experienced the onset of pain within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)) and § 100.3(c)(10)(ii) (QAI criteria)).

Respondent's argument rests, at least in part, on the fact that for more than four months after receiving her September 2022 vaccination, Ms. Hiatt attended at least four separate visits with medical providers where she did not report shoulder pain. Opp. at 7-8. Specifically, on October 17, 2022, 37 days after vaccination, Ms. Hiatt consulted with her PCP regarding pending lab results, and she did not mention any shoulder pain or injury. Ex. 2 at 56-58. On November 23, 2022, and December 16, 2022, respectively, Ms. Hiatt underwent a DEXA scan to evaluate her bone density and a bilateral mammogram and failed to mention any shoulder pain or injury. *Id.* Then, on January 17, 2023, over four months after receiving the vaccination, Ms. Hiatt again consulted with her PCP, this time regarding her chronic lower back pain/lumbar disc disease, and she still did not mention any shoulder pain or injury. *Id.* at 53-55. Respondent noted that at this visit, Petitioner

---

[4] After Petitioner filed additional records to establish proof of vaccination, Respondent no longer contested that portion of Petitioner's claim. *See* Ex. 7 and *see generally* Opp.

9

reported that she "[e]xercises 4-5X/week. Stretches 30 mins. Plays Tennis 3X/week for 2 hours." *Id*. at 53.

The first time Ms. Hiatt reported left shoulder pain was during a telehealth consultation with her PCP on January 25, 2023, four months and 15 days after vaccination. Ex. 2 at 50. During this consultation, she reported that "in September" she received the flu vaccine in the "upper part of her left deltoid" and "wondered if the flu vaccine went into her left shoulder joint." *Id*. In addition, Respondent noted that five and half months after vaccination, Petitioner reported that she was still exercising four to five times and week and playing tennis three times a week for two hours. Opp. at 7-8. Respondent argued that Petitioner has failed to file any contemporaneous records to support a 48-hour onset. Opp at 8.

These facts and statements initially seem to undermine Petitioner's claim – but there are other facts that bear on this dispute, and they favor Petitioner's onset contentions. First, Ms. Hiatt is a retired nurse. As is often seen in SIRVA cases, medical professionals tend to self-treat their shoulder injuries, delaying formal medical treatment at a much higher rate than other petitioners. These individuals know that shoulder pain is a common side effect of vaccination, and they forgo medical assistance until it becomes clear that the pain is not subsiding. Thus, her medical expertise can partially explain some of the treatment delay.

Second, when Petitioner was seen for her shoulder symptoms on February 27, 2023, she specifically stated in her intake questionnaire that "I had a flu shot 9/19 [sic] and [the] pain began next day [and] never subsided. The injection was given very high [and] I think perhaps it went into my bursa or joint space [and] caused inflammation." *Id*. at 6. Petitioner further reported that the vaccine "was given by a pharmacist and was quite high on her shoulder." *Id*. at 3. This is very specific evidence on the question of onset.

In addition, Ms. Hiatt has stated in witness declarations that she experienced "left shoulder pain shortly after vaccination. I initially expected the pain to resolve, but I continued to experience significant pain over the following five months." Mot. at 7. She goes on to state that "[d]uring this period I had the other medical concerns described above [atrial fibrillation resulting in surgical ablation] which were more serious and which occupied my attention. As a result, I did not see a physician for the shoulder pain until January 25, 2023 when I saw my PCP, Bernard Chun, MD." *Id*.

All of the above allows for a determination that Petitioner has preponderantly met the 48-hour onset requirement.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in her left shoulder on September 10, 2022. Ex. 1 at 2; Ex. 7 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 3; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Starting from September 24, 2016 (48 hours after vaccination), the records undoubtedly demonstrate that Petitioner suffered the residual effects of her shoulder injury for more than six months. *See, e.g.*, Ex. 3 at 4 (records of Petitioner's appointment with Dr. Marumoto). Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## VI. Damages

### I. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award

such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

## II. Parties' Arguments

### a. Petitioner

Petitioner has requested $45,000.00 in pain and suffering. She argued that she continues to have pain and discomfort in her left shoulder on a daily basis. Mot. at 8. Ms. Hiatt states her life expectancy is 11 years according to the National Vital Statistic

Reports, and that it is a "virtual certainty" that her current symptomology will worsen as she ages. In her Reply, Petitioner notes that she is a

> lifelong competitive athlete whose regular exercise regimen is critical to her health and well-being even at the age of 78. Unlike a claimant who has pre-existing conditions or injuries, or whose health is more typical of a 78 year old, the actual impact of this injury on Petitioner is significantly greater than the level of impairment for someone in lesser physical condition. Petitioner's left arm and shoulder were intact without any residual impairment related to age or pre-existing injury or condition before her vaccination. Her residual impairment is still something she experiences on a daily basis and has not shown any improvement. The strong likelihood is that, at age 78, this impairment will be with Petitioner for the rest of her life. In assessing Petitioner's damages, her lifelong, exceptional physical condition provides context for measuring the extent to which this vaccination has impacted her life.

Petitioner agrees that her case would fall into the "mild to moderate injury range." Reply at 2-3. In discussing a case cited by Respondent on Reply, *McGraw v. Sec'y of Health & Human Servs.,* No. 21-0072V, slip op. at 10 (Fed. Cl. Spec. Mstr. Feb. 15, 2024), Petitioner notes that the *McGraw* petitioner suffered a mild SIRVA for approximately six months. Reply at 3. That claimant was awarded $37,500.00 in pain and suffering. *Id*. Ms. Hiatt argues that her treatment was more extensive that the *McGraw* petitioner, and that Ms. Hiatt continues to suffer from daily discomfort and limited range of motion for more than two years after vaccination. *Id*.

### b. Respondent

In his brief, Respondent summarizes the specific factors relevant to pain and suffering damages in SIRVA cases, explaining that factors such as delays in initial treatment and/or significant gaps in treatment signal a mild injury. Opp. at 9-10. Respondent also noted that records prepared close in time to the alleged injury, and before a petitioner has consulted a lawyer in anticipation of litigation, are generally more reliable. *Id*. at 10.

Respondent does not provide any specific proposed amount to award Petitioner for her pain and suffering, stating that I should consider the Petitioner's circumstances, physical exam, and treatment and prognosis in making an award in this case. Opp at 11. To that end, Respondent offered no specific comparable case and simply states that "the

Court has been fairly consistent in its pain and suffering awards in very mild, mild to moderate, moderate-to-severe, and surgery/unique cases." Opp. at 11.

Finally, Respondent states that "the government routinely proffers cases for less than $37,500.00 when clear that damages are worth less than in the lowest reasoned pain-and suffering awards." Opp. at 11. Respondent noted that Ms. Hiatt's treatment course was very limited. Her left shoulder symptoms were managed with eight PT sessions and one steroid injection. *Id*. And her four-month delay before seeking treatment is consistent with a mild injury. *Id*.

### III.     Appropriate Compensation in this SIRVA Case

In this case, awareness of the injury is not disputed. The record reflects that at all times Ms. Hiatt was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of her injury. When performing this analysis, I review the same record relied upon to determine entitlement, including the filed affidavits and medical records, and written briefs. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases.

Determining the proper amount of pain and suffering damages to award in this case is made difficult because neither Petitioner nor Respondent cited to any comparable cases to support their proposed figures. In fact, Respondent did not even cite a specific proposed amount *at all,* other than to state that Respondent routinely proffers amounts less than $37,500.00 in cases comparable to the present.

Special masters (in conjunction with the SPU) have now issued more than 200 reasoned SIRVA damages decisions, as Respondent aptly noted in his Response. Accordingly, there is no justifiable reason why either party has not cited to a single case to support their proposals. Respondent's decision to not offer a competing amount, or even one comparable case supporting such a figure, did little to help resolve the dispute. Presumably, Respondent believes that his best offer was made when he tendered a proffer to Petitioner. However, I have repeatedly noted that proffers only reflect *Respondent's* judgment as to the correct damages sum, and thus (while they may or may not be legally defensible or persuasive) are not as useful in determining damages as a reasoned determination by a special master. As I have stated in this and prior decisions, Respondent runs the risk that I will simply adopt the Petitioner's figure if this approach is maintained in future cases. I would have done so in this case - had Petitioner cited to and discussed comparable cases to support her $45,000.00 proposal, which she did not.

14

The record in this case establishes that Ms. Hiatt suffered a very mild SIRVA injury which did not necessitate surgery. Her treatment course was very limited. Her left shoulder symptoms were managed with eight PT sessions and one steroid injection. Her approximately four-month delay before seeking treatment is consistent with a mild injury. *See Shelton v. Sec'y of Health & Human Servs.*, No. 19-279V, 2021 WL 2550093, at *7 (Fed. Cl. Spec. Mstr. May 21, 2021) ("[t]he fact that petitioner could cope with her injury for such a long period of time counsels in favor of a lower pain and suffering award. Treatment gaps are a relevant consideration in determining the degree of petitioner's pain and suffering"). Her actual treatment course, when she did seek out medical advice, lasted less than four months – for a total of an approximate eight-month injury.

In *Turnquest v. Sec'y of Health & Human Servs.*, No. 21-0065V, 2024 WL 3665961, at *1 (Fed. Cl. Spec. Mstr. July 2, 2024), a petitioner delayed seeking treatment for more than three months post vaccination. *Id*. The petitioner's entire treatment course consisted of three orthopedic visits, one x-ray, and one MRI. *Id*. In addition, there were at least two substantial treatment gaps and a lack of any further treatment after six months. Surgery was proposed, but never occurred. In that case, I noted that the very limited nature of the petitioner's treatment and the treatment gaps were difficult to ignore and indicated that the injury was evidence that the injury was not severe. That claimant was awarded $30,000.00 in pain and suffering. *Id*. Likewise, Ms. Hiatt's case is a very mild SIRVA case with limited treatment, as well as four-month treatment gap in the very initial phase of the injury. Ms. Hiatt's case was not as severe as in *Turnquest,* however, as surgery was never recommended. Thus, the award will be discounted to reflect this fact.

Under such circumstances and considering the arguments presented by both parties, a review of the cited cases, and based on the record as a whole, I find that **$25,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

## VII.   <u>CONCLUSION</u>

Based on my consideration of the complete record as a whole and for the reasons discussed above, pursuant to Section 12(d)(3)(A), **I find that $25,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[5] Accordingly, I award Petitioner a lump sum payment of <u>$25,000.00,</u> to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for**

---

[5] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

15

**prompt disbursement to Petitioner**. This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of Court is directed to enter judgment in accordance with this Decision.[6]

    **IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.